**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

**IN AND FOR NEW CASTLE COUNTY**

GEMALTO, INC.,                )
                                     )
            Plaintiff,           )
                                       )
v.                                     )
                                     )     C.A. No. N15M-07-052
MERCHANT CUSTOMER EXCHANGES, LLC,  )
                                     )
           Defendant.       )
                                     )

Date Submitted: August 21, 2015
Date Decided: September 2, 2015

**ORDER**

**GEMALTO'S MOTION TO COMPEL DISCOVERY OF DOCUMENTS AND NON-PARTY PAYDIANT, LLC'S MOTION TO QUASH PLAINTIFF'S OUT-OF-STATE SUBPOENA**

Daniel A. Griffith, Esquire, WHITEFORD TAYLOR PRESTON, LLC, 405 North King Street, Wilmington, DE 19801; Benjamin L. Stewart, Esquire, *pro hac vice*, BAILEY BRAUER, PLLC, Campbell Centre I, 8350 N. Central Expy, Site 206, Dallas Texas 75206. Attorney for Gemalto, Inc.

Karl G. Randall, Esquire, MORRIS, NICHOLS, ARSHT & TUNNELL, LLP, 1201 N. Market Street, P.O. Box 1347, Wilmington Delaware 19899-1347. Attorney for Non-Party Paydiant, LLC.

**MANNING, Commissioner**

Before the Court is Plaintiff Gemalto's Motion to Compel Production of Documents, based on its out-of-state subpoena *dues tecum,* directed against non-Party Paydiant, LLC. Additionally, Paydiant, has moved to Quash Plaintiff's out-of-state subpoena. Paydiant argues that Gemalto's subpoena is unduly burdensome and improperly seeks to obtain confidential and trade secret information of Paydiant.

## FACTS AND PROCEDURAL HISTORY

A business dispute between Gemalto and Merchant Customer Exchanges, LLC, (MCX) is currently being arbitrated before the American Arbitration Association (AAA) in Texas. The essence of the dispute is that MCX terminated its contact with Gemalto for the development of payment processing software for use by smartphones, in violation of their agreement, and failed to pay Gemalto a $40 million USD decommissioning indemnity payment. Upon termination of the contract, MCX hired Paydiant to develop the same type of software; Paydient and Gemalto were, and are still, direct competitors in this field. On April 21, 2015, the AAA authorized a subpoena directed against Paydiant (Delaware Corporation). On July 10, 2015, a Delaware subpoena *duces tecum* was served on Paydiant's registered agent in Dover Delaware. Receiving no acceptable response, Gemalto filed a Motion to Compel Production of Documents from Paydiant on July 30, 2015. In turn, Paydiant filed a Motion to Quash Gemalto's Motion on August 7, 2015. Paydiant argues that the Request for Production is unduly burdensome and will force it to reveal confidential and proprietary trade secret information to a direct competitor. [1] A hearing before all parties was held on August 21, 2015.

---

[1] Paydiant also points out that it was not afforded an opportunity to be heard by the AAA prior to issuance of the subpoena in question and had no chance to object at that stage—a valid point as far as the Court can see.

1

# ANALYSIS

Discovery in a civil case is generally controlled by Superior Court Civil Rule 26.[2] "Parties may seek discovery of any non-privileged, relevant matter, as well as information reasonably calculated to lead to the discovery of admissible information."[3] Rule 26(a)(1)(a)(i) states that the Court shall limit the extent of discovery if it determines that the "discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive… ." Moreover, when trade secret information is at issue, the dispute is controlled by Super Court Civil Rule 45(c)(3)(A). Rule 45(c)(3)(A) states that "[o]n timely motion, the Court shall quash or modify a subpoena if it . . . (ii) requires disclosure of privileged information or other protected matter and no exception or waiver applies."

---

[2] Rule 26. General provisions governing discovery.
(a) Discovery methods. -- Parties may obtain discovery by one or more of the following methods: Depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property, for inspection and other purposes; physical and mental examinations; and requests for admission.
(b) Discovery scope and limits. -- Unless otherwise limited by order of the Court in accordance with these rules, the scope of discovery is as follows:
(1) In general. -- Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
The frequency or extent of use of the discovery methods set forth in subdivision (a) shall be limited by the Court if it determines that: (i) The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation. The Court may act upon its own initiative after reasonable notice or pursuant to a motion under subdivision (c).
[3] *Huff Fund Inv. P'Ship v. CKX, INC.*, 2012 WL 3552687, at *1 (Del. Ch. August 15, 2012).

<u>Deposition Topics</u>

Gemalto's Request for Production of Documents comprised a list of ten topics.[4] Gemalto subsequently withdraw its request as to items No.5, No.6 and No.9. The crux of the dispute, as Gemalto alleges, is that MCX terminated the contract for reasons of convenience—namely that MCX's new CEO, Dekker Davison, had a prior relationship with Paydiant, a company now owned by eBay Inc., and wanted them to have the development contract. Conversely, MCX claims that it terminated the contract based on the failure of Gemalto to meet performance goals, and nothing more. Thus, the dispositive question is what was the *real* motivation behind MCX's termination of the contract with Gemalto.

According to argument by counsel for Gemalto, discovery against MCX is still on-going at this stage and there are currently motions to compel pending in other courts. Additionally, Gemalto's pleadings indicate that, to date, MCX has provided over 312,000 pages of responsive documents in discovery. As noted, the issue in this litigation is the reason why MCX terminated the contract with Gemalto. Logically, documents evidencing MCX's internal thought processes and subjective opinions of Gemalto, will be found in the possession of MCX.

Gemalto has not made any showing, thus far, that it cannot obtain all relevant discovery from MCX—it just wants to cast a wider net and see what Paydiant might have in its possession. As a non-party to the litigation, requiring Paydiant to produce any discovery is burdensome; whether it is "unduly burdensome" is a question for another day. In any event, as a non-party, Paydiant should not be placed in a position of providing discovery that is duplicative, cumulative or could more conveniently and reasonably be located in the possession of its creator—MCX. However, the Court recognizes that in the course of soliciting Paydiant to take-over the software

---

[4] Plaintiff's Motion to Compel, Exhibit C at 4.

development from Gemalto, MCX may have communicated information concerning the reason for Gemalto's termination to Paydiant; information that may be relevant to Gemalto's claim.

Accordingly, the Court will limit discovery to the following topics only:

1. All documents (created prior to the filing of the Arbitration Complaint) in the possession of Paydiant regarding, referencing or concerning MCX's decision to terminate its agreement with Gemalto.

2. All documents (created prior to the filing of the Arbitration Complaint) in the possession of Paydiant regarding the Lexington pilot, its alleged failure and/or Gemalto's ability, or lack thereof, to perform under the terms of its agreement with MCX.

3. All documents regarding Gemalto and its contract with MCX, between Paydiant and Dekkers Davidson, created between July 2013 and the filing of the Arbitration Complaint.

As suggested by counsel for Gemalto at the hearing, Gemalto will pay all costs reasonably associated with the discovery production by Paydiant. The term "document" will have the same definition as originally provided by Gemalto. Nothing in this production should be taken as to require Paydiant to disclose trade secrets or commercially sensitive information. If necessary, however, Paydiant is entitled to redact such information and shall create a Privilege Log for future review by the Court if necessary.

## CONCLUSION

For the reasons set forth herein, Gemalto's Motion to Compel is **GRANTED in part and DENIED in part**; Paydiant's Motion to Quash is also **GRANTED in part and DENIED in part.**

**IT IS SO ORDERED**.

/s/ *Bradley V. Manning*
BRADLEY V. MANNING,
Commissioner

oc:    Prothonotary